UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

H.B. Fuller Company,

        Plaintiff,

v.                                                              Civil No. 07-1639 (JNE/JJG)
                                                              ORDER

Mark Mooney,

        Defendant.

      H.B. Fuller Company brought this action against its former employee, Mark Mooney, for breach of contract and misappropriation of trade secrets. Three motions came before the Court on June 8, 2007: (1) Mooney's Motion to Dismiss for Improper Venue or Alternatively to Transfer Venue; (2) H.B. Fuller's Motion for Sanctions; and (3) H.B. Fuller's Motion for a Preliminary Injunction. At the motion hearing, the Court denied Mooney's motion and took H.B. Fuller's motions under advisement. For the reasons set forth below, the Court grants in part and denies in part H.B. Fuller's Motion for a Preliminary Injunction. The Court denies H.B. Fuller's Motion for Sanctions.

## I.    BACKGROUND

      H.B. Fuller manufactures and sells adhesives, sealants, paints, and other chemicals. It sells adhesives to companies that laminate layers of film, foil, or paper to create flexible packaging, *e.g.*, bags for potato chips, wrappers for candy bars, and condiment packs. Adhesives used in flexible packaging are solvent-based, water-based, or solventless. H.B. Fuller manufactures and sells water-based and solventless adhesives.

      Mooney worked for H.B. Fuller from 1993 to 2007. From 1993 to 2000, he worked as a Territory Manager in Canada. In 2000, H.B. Fuller promoted him to Strategic Account Manager for Flexible Packaging in the United States. In April 2005, H.B. Fuller promoted Mooney to the

1

position of Strategic Account/Program Manager for H.B. Fuller's flexible packaging business in the United States and Canada. As part of the promotion, Mooney executed a non-compete agreement (Agreement). In November 2005, Mooney reaffirmed the Agreement's terms when he became a Senior Territory Manager. He resigned in March 2007.

A few days after terminating his employment at H.B. Fuller, Mooney started to work at Coim USA, Inc. Coim USA sells solvent-based and solventless adhesives used in flexible packaging. Coim USA does not sell water-based adhesives.

Shortly after Mooney started to work at Coim USA, H.B. Fuller brought this action against him in state court. Mooney removed the action to this Court. After removal, the parties stipulated to the entry of a temporary restraining order. H.B. Fuller now moves for a preliminary injunction and for sanctions.

## II. DISCUSSION

**A.    H.B. Fuller's Motion for a Preliminary Injunction**

To determine whether to grant a motion for a preliminary injunction, a court must consider: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm absent the injunction; (3) the balance between this harm and the harm experienced by other parties if the injunction issues; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving they are entitled to such relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry.

*Dataphase*, 640 F.2d at 113*; see also S & M Constructors, Inc. v. Foley Co.,* 959 F.2d 97, 98 (8th Cir. 1992).

  *1.  Breach of contract*

  H.B. Fuller alleges that Mooney breached the terms of the Agreement by soliciting sales for Coim USA from companies covered by the Agreement, engaging in the development or production of products covered by the Agreement, and by disclosing H.B. Fuller's confidential information to Coim USA.  The parties dispute whether Minnesota or Wisconsin law applies to H.B. Fuller's claim for breach of contract.  The Agreement contains a Minnesota choice-of-law clause, and Minnesota courts generally honor choice-of-law clauses.  *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997); *Milliken & Co. v. Eagle Pkg. Co.*, 295 N.W.2d 377, 380 n.1 (Minn. 1980).  Thus, the Court applies Minnesota law.

  Non-compete agreements, though disfavored by Minnesota courts, are enforceable if they serve a legitimate interest and are no broader than necessary to protect this interest.  *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998).  To assess whether a non-compete agreement is reasonable, a court considers "the nature and character of the employment, the nature and extent of the business, the time for which the restriction is imposed, the territorial extent of the covenant, and other pertinent conditions."  *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 799 (Minn. Ct. App. 1993).  In addition, to be enforceable, a non-compete agreement must be ancillary to the initial employment agreement or, if not ancillary to the initial agreement, supported by independent consideration.  *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982).

  In this case, Mooney executed the Agreement as part of his promotion to the position of Strategic Account/Program Manager.  He reaffirmed the Agreement's terms when he became

Senior Territory Manager. In those capacities, Mooney acted as a sales representative and had access to confidential information such as H.B. Fuller's marketing strategies and production methods. In executing the Agreement, Mooney agreed for twelve months after the termination of his employment at H.B. Fuller not to "sell or solicit orders for any Conflicting Product to or from any customer whom [he] solicited or rendered technical assistance to, or whose account [he] supervised or serviced for [H.B. Fuller], at any time during the last two years of [his] employment with [H.B. Fuller]." He also agreed not to "engage in or be employed in the development or production of a Conflicting Product." The Agreement defines "Conflicting Product" as:

> [A]ny product, process, equipment, concept or service (in existence or under development) of any person or organization (other than [H.B. Fuller]), which resembles or competes with a product, process, equipment, concept or service upon which I may have worked or which I may have sold or been authorized to sell, for which I may have solicited or assisted in the solicitation of sales during the last two (2) years of my employment by [H.B. Fuller], or concerning which I acquired Confidential Information at any time through my work with [H.B. Fuller].

At this early stage of the litigation, the Court concludes that the non-compete provisions at issue in this case are likely enforceable. *See Modern Controls, Inc. v. Andreakis*, 578 F.2d 1264, 1268 (8th Cir. 1978); *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 & n.1 (Minn. 1980).

The Court next considers whether H.B. Fuller has demonstrated that Mooney is likely breaching the non-compete provisions. There is evidence in the record that Mooney engaged in prohibited sales contacts for Coim USA and advised Coim USA on solventless adhesives. The limited record before the Court reveals that H.B. Fuller will likely succeed on its claim that Mooney breached the Agreement's non-compete provisions.

As noted above, H.B. Fuller also alleges that Mooney violated the Agreement's confidentiality provisions. In executing the Agreement, Mooney agreed "not to use or disclose any Confidential Information, either during or after employment by [H.B. Fuller], except as required by [his] duties to [H.B. Fuller]." The Agreement defines "Confidential Information" as:

> [A]ll formulas, processes, customer lists, computer user identifiers and passwords, personal data identifiable to individuals, and all purchasing, engineering, accounting, marketing and other information, not generally know and proprietary to [H.B. Fuller], including but not limited to, information relating to research, development, manufacture or sale of [H.B. Fuller] products, as well as formulas, processes and other information received by [H.B. Fuller] under an obligation of secrecy. All information disclosed to me or to which I have access during the period of my employment, which I have reasonable basis to believe to be Confidential Information, or which is treated by [H.B. Fuller] as being Confidential Information, shall be presumed to be Confidential Information.

Here, there is evidence that Mooney took H.B. Fuller's Confidential Information to Coim USA. For example, Mooney took thousands of computer files from H.B. Fuller and copied them to his Coim USA computer. The files included customer lists and prospective customer lists. The limited record before the Court reveals that H.B. Fuller will likely succeed on its claim that Mooney breached the Agreement's confidentiality provisions.

"In a proper case irreparable harm to the employer may be inferred if it can be shown that the employee breached an enforceable restrictive covenant." *Edin v. Josten's, Inc.*, 343 N.W.2d 691, 694 (Minn. Ct. App. 1984) (citing *Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844 (Minn. 1964)). From Mooney's likely breaches of the Agreement, the Court infers that H.B. Fuller faces a threat of irreparable harm absent injunctive relief.

Against the threat of irreparable harm faced by H.B. Fuller, the Court balances the harm Mooney will experience if enjoined. Neither H.B. Fuller nor Mooney frankly addresses the balance of harms. According to Mooney, H.B. Fuller faces harm that is "virtually nonexistent." H.B. Fuller asserts that Mooney will "suffer no harm from preliminary injunctive relief." As set

5

forth above, H.B. Fuller faces a threat of irreparable harm absent injunctive relief. A restriction on Mooney's employment obviously harms Mooney. The Court concludes that the threat of irreparable harm to H.B. Fuller outweighs the harm that Mooney will experience from a preliminary injunction. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 453 (Minn. Ct. App. 2001).

Finally, the Court considers the public interest. Again, although Minnesota disfavors non-compete agreements, they are enforceable if they serve a legitimate interest and are no broader than necessary to protect the interest. *Kallok*, 573 N.W.2d at 361. Here, the Agreement's non-compete provisions are likely enforceable, and Mooney is likely breaching them and the confidentiality provisions. The Court concludes that this factor favors H.B. Fuller.

In short, the Court concludes that H.B. Fuller is likely to succeed on its claim for breach of contract, that H.B. Fuller faces a threat of irreparable harm absent injunctive relief, and that the balance of harms and public interest favor H.B. Fuller. Accordingly, the Court will issue a preliminary injunction. Before addressing the scope of the preliminary injunction, the Court considers H.B. Fuller's claim for misappropriation of trade secrets.

### 2. *Misappropriation of trade secrets*

The Minnesota Uniform Trade Secret Act (MUTSA) protects certain information by providing for an action for trade secret misappropriation.[1] *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). Under the MUTSA, a plaintiff must establish the existence of a trade secret and actual or threatened misappropriation of that trade secret. Minn. Stat. § 325C.01 (2006). A trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

---

[1] With regard to H.B. Fuller's claim for misappropriation of trade secrets, Mooney does not contest the applicability of Minnesota law for present purposes.

by proper means by, other persons who can obtain economic value from its disclosure or use," and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.*, subd. 5.  In other words, to be a trade secret:  (1) information must be neither generally known nor readily ascertainable; (2) information must derive independent economic value from secrecy; and (3) the plaintiff must make reasonable efforts to maintain secrecy.  *Electro-Craft*, 332 N.W.2d at 899.

To succeed on a trade secret misappropriation claim, a plaintiff must first define its alleged trade secrets with sufficient specificity.  *Id.* at 898 (explaining that plaintiff's lack of specificity was fatal to its trade secret claim); *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039, 1046 (D. Minn. 2001) (noting that plaintiff had failed to show likelihood of success on the merits "primarily because it had not been able to articulate with specificity" the allegedly misappropriated trade secrets).  In this case, H.B. Fuller's memorandum in support of its motion for a preliminary injunction identifies in general terms H.B. Fuller's alleged trade secrets.  Mooney's response pointed out H.B. Fuller's failure to specifically identify the trade secrets that he allegedly misappropriated.  H.B. Fuller replied by offering more information about its trade secrets, but it did not sufficiently address whether the alleged trade secrets meet the MUTSA's definition.  Accordingly, the Court concludes that H.B. Fuller has not demonstrated a likelihood of success on the merits of its claim for misappropriation of trade secrets.  The Court therefore denies H.B. Fuller's motion insofar as it relates to the claim for misappropriation of trade secrets.  *See Electro-Craft*, 332 N.W.2d at 897-98; *Int'l Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 100 (D. Minn. 1992).

*3.     Scope of injunction*

At the motion hearing, the Court informed the parties of its inclination to issue an injunction and gave the parties an opportunity to agree to its scope. The parties agreed on some issues, but they did not reach a comprehensive agreement. Mooney nevertheless submitted a detailed proposal without conceding that a preliminary injunction is appropriate. H.B. Fuller did not submit a proposed injunction after the hearing.

The Court concludes that a preliminary injunction that incorporates the parties' agreement as to a no-contact list is appropriate. The parties dispute whether Mooney should be able to sell solvent-based adhesives to certain facilities.[2] H.B. Fuller contends that he should be prohibited from such sales because solvent-based adhesives "compete with H.B. Fuller's products." The limited record before the Court reveals that solvent-based adhesives do not compete with H.B. Fuller's adhesives. Thus, Mooney shall not be restrained from attempting to sell solvent-based adhesives to certain facilities. The Court restrains Mooney from disclosing to Coim USA information about H.B. Fuller's marketing strategies, customers, and products, and from developing for Coim USA water-based or solventless adhesives. The Court limits the duration of the preliminary injunction to three months. *Cf. Rathmann Group v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989) ("An order that grants the plaintiff all the relief it ultimately may be entitled to and that makes no provision for further hearings is a permanent injunction.").

*4.     Bond*

H.B. Fuller shall post a bond in the amount of $40,000. *See* Fed. R. Civ. P. 65(c). If the Court extends the preliminary injunction, the Court will consider whether to require H.B. Fuller to post an additional bond. *See Rathmann Group*, 889 F.2d at 789.

---

[2]     According to H.B. Fuller, Mooney seeks to sell solvent-based adhesives to nine facilities. Mooney lists eleven. For present purposes, the Court uses Mooney's list.

**B.     H.B. Fuller's Motion for Sanctions**

H.B. Fuller moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Court denies the motion.

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. H.B. Fuller's Motion for a Preliminary Injunction [Docket No. 26] is GRANTED IN PART and DENIED IN PART.

2. H.B. Fuller's Motion for Sanctions [Docket No. 36] is DENIED.

3. Mooney is PRELIMINARILY ENJOINED as follows:

    a. Mooney shall not contact, directly or indirectly, any facility listed in Exhibit A to Docket No. 67.

    b. Mooney shall not, directly or indirectly, sell, attempt to sell, or take orders for any solventless or water-based adhesives to or from any facility listed in Exhibit B to Docket No. 67.

    c. Mooney shall not disclose, directly or indirectly, to Coim USA any information about H.B. Fuller's marketing strategy, other business plan or strategy, new product development, customer lists, prospects, products, manufacturing processes, test results, or trials.

    d. Mooney shall not, directly or indirectly, develop for Coim USA any solventless or water-based adhesives.

    e. Mooney shall maintain copies of all documents he authors, prepares, or receives in the course of his employment with Coim USA in the event they are required to be produced in discovery.

4. Notwithstanding any provision of the preliminary injunction, Mooney's attorneys may contact any facility covered by the preliminary injunction in connection with their representation of Mooney.

5. Notwithstanding the provisions of Federal Rule of Civil Procedure 30, H.B. Fuller may take the deposition of Mooney in Madison, Wisconsin, at a reasonable time, prior to trial for the purpose of inquiring about Mooney's compliance with the terms of the preliminary injunction and the temporary restraining order.

    6.       The preliminary injunction shall take effect upon H.B. Fuller's posting of a bond in the amount of $40,000.

    7.       The preliminary injunction shall expire on September 21, 2007, unless otherwise ordered by the Court.

    8.       This Order supersedes the Stipulation and Order Regarding Motion for Temporary Restraining Order [Docket Nos. 16 & 17].

Dated: June 22, 2007

                                                                     s/ Joan N. Ericksen  
                                                                     JOAN N. ERICKSEN  
                                                                     United States District Judge